Bradbury, J.
The plaintiff in error, Thomas Cassilly, is the son of the defendant in error. In the year 1890, her brother, Francis Owen, died in Cincinnati, Ohio, unmarried, leaving a will, by the terms of which her son, Thomas, plaintiff in error, was made the principal legatee. The testator left surviving him two sisters, the defendant in error, and Ellen Goddard, and possiby one brother ; however, as they had not heard from the latter for many years, he was supposed to be dead. These two sisters of the testator were not satisfied with the provisions of the will of their brother, and were considering the expediency of contesting its validity. Wishing to prevent this, the plaintiff in error sought a compromise with his mother, the defendant in error, and also with his aunt, Ellen Goddard. He first entered into a written contract of settlement with his mother, by the terms of which he paid her five hundred dollars in consideration among other tilings, that she would neither bring an action herself to contest the validity of the will, nor become a party to such action if brought by another. He and his mother subsequently disagreed respecting the amount, which, by the terms of the settlement, was to be paid to her ; he claiming that the amount was five hundred dollars, and she contending that she was to be paid whatever sum, her son should pay to her sister in case the two latter should come to a settlement. Afterwards her son and sister came to an agreement by which the latter was paid two thousand *591 dollars. Thereupon the defendant in error brought an action to recover the difference between what had in fact been paid to her under the settlement with her ($500.00), and the sum paid to her sister under the settlement with the latter.
In her petition she averred that by the terms of the settlement between herself and her son, the latter was to pay to her whatever he should pay to her sister according- to the terms of the settlement had by him and the sister.
The defendant below, by answer, among other matters set in bar of the action that he and the plaintiff below, had come to an agreement by the terms of which he was to pay, and had paid her five hundred dollars, in full settlement of all rights she might have in the estate in question.
The action was founded on a contract by the terms of which Mrs. Cassilly had released to her son, defendant below, whatever interest she might have in the estate of her deceased brother. The son rested his defense upon the' same contract. Both ag-reed that she had released that interest to him; the amount to be paid to her by him in consideration of such release was the only matter in dispute between them.
When the cause came on for trial in the Superior Court, the son, defendant below, introduced in evidence, in support of his contention in this respect; the following’ written instrument:
‘ ‘In consideration of five hundred dollars ($500.00) to me this day paid by Thomas Cassilly, I hereby release and give to him all the interest I have or may ever have in the estate of Francis Owens, deceased, whether said estate or any part thereof, passes or may ever pass to me by descent, bequest, gift, devise or otherwise.
*592 I further agree, in consideration of said five hundred dollars, not to contest the probate of the will of the late Francis Owens, dated February 25, 1890; and not to bring an action or to be a party to the same to set said will aside.
her
Margaret (X) Cassilly. mark.
Witnesses :
Edw. A. Foy,
Wm. F. Foy.
Dated July 26, 1890.”
While this instrument bears the form of a receipt, it nevertheless contains the terms of a valid contract entered into by and between Margaret Cassilly and her son Thomas. It recites the fact of payment, but in addition to that it states, also ; that in consideration of five hundred dollars, she releases to him whatever interest she might have in the estate of her brother, and that she agrees not to engag’e in any contest to set aside the will of that brother.
This instrument, in as far as it embodies the contract which the parties have made, cannot be contradicted or varied by parol evidence. It obligated him to her in the sum of five hundred dollars, neither more nor less, and until it should be set aside in equity, she could no more vary, by parol evidence, the obligation it imposed upon him, than he could, by that method, vary its terms as to what she had undertaken to do. Jackson v. Ely, 57 Ohio St., 450, decided contemporaneously with this cause.
After this paper had been given in evidence the plaintiff below, Mrs. Cassilly, was called as a witness, and, over the objection of plaintiff in error, defendant below, testified as follows:
*593 “Direct examination by Mr. Baker :
£ £Q. Did your son, Thomas Cassilly, at your house, in the presence of his sister, tell you the morning that he came up there, when he would give you five hundred dollars to settle, no matter what he gave Mrs. Goddard?
“(Objected to by counsel for ■ defendant as repetition. Objection overruled ; to which counsel for defendant excepted.)
“A. He did. He told me that he would give me five hundred dollars, and give the same to Mrs. Goddard. I said Mrs. Goddard would not take five hundred dollars. Well, he said, if she don’t take five hundred dollars, she would get none, and to please me he would come up and take me to Hamilton if I would go.
£ £ Q. I want to know if he told you at that time, or you agreed' with him to take five Hundred dollars, no matter what Mrs. Goddard got ?
“(Objected to by counsel for defendant. Objection overruled.)
“A. He did.
“ Q. I want to know whether or not he told you that he would give you five hundred dollars, .no matter what he gave Mrs. Goddard ?
“(Objected to by counsel for defendant. Objection overruled; to which counsel for defendant excepted.)
“Q. I want to know whether or not Mr. Cassilly told you that he would give you five hundred dollars, no matter what he gave Mrs. Goddard, or did he agree to give you what he gave Mrs. Goddard?
“A. Yes, sir; what he would give one sister, he would give to the other, and no more. ”
*594 The only effect this evidence could produce was to show that the written contract did not correctly express the agreement which the parties had made, that while it only imposed upon her son an obligation to pay her five hundred dollars, his real obligation was to pay her what he had paid her sister, which was two thousand dollars. Its admission was a violation of the settled rule of evidence, which prohibits the variation or contradiction of a written contract by parol evidence.
In support of the ruling which admitted this parol evidence:
Authorities are cited which hold that a party against whom a contract is thus introduced in an action, may introduce evidence to show that it had not been executed by him at all, or that he had been induced by some trick or devise to attach his signature to the paper, supposing it to be another and different document. The evidence however discloses nothing of that kind in the case before the court. The version given by Mrs. Cassilly, herself, while testifying to the transaction, affords no ground to suppose that the paper was not truthful^ read to her, or that it was not the one she had in fact signed, no fraud was practiced upon her in that respect. True, she could not write, and was dealing with her own son, in whom she says she placed great confidence, which it is quite natural that she should; and on that account may not have weighed the words of the writing when read to her with the caution and deliberation she would have exercised if she had been dealing with a stranger; nevertheless she freely and voluntarily executed the writing, after its contents had been correctly read to her. Whatever the rule may be respecting the introducing’ of evidence to show that a *595 party has been trapped by a fraudulent device into executing a paper he did not intend to sign, it does not follow that such rule should also be applied to a case where a party executed a paper knowing what it was, but, by reason of confidence in the other party to it, did not carefully weigh the words of the instrument or fully understand their import. In the former case, the party defrauded ■might be permitted to show in any action or proceeding wherein the instrument became material that it was never executed by him, and therefore never had any legal operation, and should be treated as a nullity. The introduction of evidence to establish this state of facts would in no wise violate the rule which prohibits the contradiction, by parol, of the terms of a written instrument. Tn the latter case however, the instrument even if extremely improvident in its terms, yet having been knowingly and voluntarily executed, is not a nullity. If it should be conceded that the circumstances show that a court of equity ought to have set aside the con tract, if an action had been brought for that purpose by the party that had been overreached, nevertheless, until that shall be done, it remains binding on the parties and is within the protection of the rule of law that prohibits the admission of parol evidence to contradict its terms.

Judgment reversed.